**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JOHN EZE, an Individual,

            Plaintiff,

-vs-                                                    Case No. 6:11-cv-1213-Orl-22DAB

AMERICAN EQUIPMENT LEASING,
LLC; AMERICAN EQUIPMENT
LEASING AND FINANCE, INC.;   and
BLAKE BOLIN,

            Defendants.
_____/

## ORDER

This cause comes before the Court for consideration of Magistrate Judge David A. Baker's August 11, 2011 Report and Recommendation ("R&R") (Doc. No. 14) and Plaintiff John Eze ("Plaintiff")'s Objections to Magistrate's Report and Recommendation (Doc. No. 19), filed on August 25, 2011.

### I.    INTRODUCTION

On July 21, 2011, Plaintiff filed a Complaint against Defendants American Equipment Leasing, LLC ("AEL"), American Equipment Leasing and Finance, Inc. ("AELF"), Blake Bolin ("Bolin"), Martha Lance, and C. Randy Lance, arising out of the sale of a heavy duty commercial truck. (Doc. No. 1).[1] In his Complaint, Plaintiff asserted four counts against Defendants: a claim for violation of Florida's Deceptive

---

[1] Later, on August 9, 2011, Plaintiff voluntarily dismissed without prejudice Defendants Martha Lance and C. Randy Lance. (Doc. No. 10). On August 10, 2011, the Court entered an order terminating Defendants Martha Lance and C. Randy Lance as defendants. (Doc. No. 13).

1

and Unfair Trade Practices Act ("FDUTPA") ("Count I"), a claim for fraud as to AEL, AELF, and Bolin ("Count II"), a claim for breach of contract ("Count III"), and a claim for civil conspiracy ("Count IV"). (Doc. No. 1).

On July 29, 2011, Magistrate Judge Baker issued, *sua sponte*, an Order to Show Cause as to whether the Court has subject matter jurisdiction based on diversity jurisdiction. (Doc. No. 7). Magistrate Judge Baker raised the question of whether diversity of citizenship existed between the parties and whether the facts of the Complaint supported the amount in controversy for jurisdictional purposes. (*Id.*).

On August 9, 2011, Plaintiff filed his First Amended Complaint ("Amended Complaint"), attempting to address the deficiencies raised by the Order to Show Cause. (Doc. No. 11). Plaintiff asserts in his Amended Complaint the same four counts as in his Complaint (*Id.*).

In Plaintiff's Response to Order to Show Cause (Doc No. 12), filed on August 9, 2011, Plaintiff asserts in a conclusory fashion that "Plaintiff's breach of contract claim alone provides for damages in excess of $75,000.00 due to lost income, lost back and front pay, and lost profits" and that his fraud and civil conspiracy claims will award punitive damages. (Doc. No. 12 at p. 2). As well, Plaintiff claims that by aggregating his claims, the damages will exceed the jurisdictional amount in controversy. (*Id.* at 2-3). In support of his argument, Plaintiff cites an unpublished district court opinion from Colorado and a non-binding Seventh Circuit opinion. *Id.* The Court will address these cases below.

Magistrate Judge Baker, after reviewing Plaintiff's Response to the Order to Show Cause, issued his R&R and recommended that Plaintiff's case be dismissed for lack of subject matter jurisdiction. (Doc. No. 14). Magistrate Judge Baker held that Plaintiff's Amended Complaint addresses the issues regarding the citizenship allegations. (*Id.* at p. 1). However, Magistrate Judge Baker found that Plaintiff has not set

forth "any *facts* in support to establish the $75,000 jurisdictional amount in controversy in either the Amended Complaint or his Response to the Order to Show Cause." (*Id.*). Rather, Magistrate Judge Baker found that Plaintiff only makes claims to unspecified amounts of lost income, lost back and front pay,[2] lost profits and potentially punitive damages under certain claims.

On August 25, 2011, Plaintiff filed Plaintiff's Objections to Magistrate's Report and Recommendation, asserting new facts to support his argument that his Amended Complaint satisfies the amount in controversy requirement. (Doc. No. 19). For the first time, Plaintiff offers support for his lost income damages by providing the mean annual salary of a commercial truck driver living in the North Central Massachusetts area. (*Id.* at p. 3). Prior to this assertion, Plaintiff provided no estimation or any indication of the amount of lost income he allegedly suffered. Because the amount in controversy is the only issue in dispute from the R&R, the Court's review will focus on whether Plaintiff has pleaded sufficiently the amount in controversy.

## II. FACTUAL BACKGROUND

In his Amended Complaint, Plaintiff alleges that he contacted AEL regarding a 2002 Freightliner Columbia, a heavy duty commercial truck advertised for sale by AEL, and that he placed with AEL a $2,500 security deposit for the truck. (Doc. No. 11 at ¶¶ 3, 15). AEL later informed Plaintiff that the 2002 Freightliner Columbia was no longer available but that it could provide an alternative vehicle, to which Plaintiff agreed. (*Id.* at ¶ 16). Plaintiff alleges that the alternative vehicle was not in the condition represented to him by AEL and that the vehicle had accumulated more miles than that which was represented to him by AEL. (*Id.* at ¶¶ 17-21). Plaintiff then alleges that when he refused to make the lease payment on

---

[2] Magistrate Judge Baker notes that back pay and front pay are damages typically awarded in an employment relationship; however, no allegations of an employment relationship have been alleged. (Doc. No. 14 at p. 2 n.1). Further, Plaintiff alleges that he is an independent owner-operator. *See* (Doc. No. 11 at ¶ 2).

3

the alternative vehicle, AEL repossessed the vehicle, including his personal property inside. (*Id.* at ¶¶ 22-23, 25).

As a result of the vehicle's condition and later repossession, Plaintiff brought this action, seeking "lost income, lost profits and other damages exceeding the total of $75,000.00." (*Id.* at ¶ 27). Regarding his FDUTPA claim (Count I), Plaintiff seeks a declaratory judgment that AEL and AELF's practices violated FDUTPA, an injunction enjoining AEL and AELF from continued violations of FDUTPA, and "actual damages including but not limited to lost income, lost profits and other damages exceeding the total of $75,000.00." (*Id.* at ¶ 33-35). As well, specifically under his fraud claim (Count II), Plaintiff seeks "actual damages, lost income, lost back-pay, lost front-pay, lost profits, and punitive damages . . ., the total of which is in excess of $75,000.00." (*Id.* at ¶ 49). With respect to his breach of contract claim (Count III), Plaintiff seeks "damages including but not limited to loss of income, lost back-pay, lost front-pay, lost profits and personal property, the total of which is in excess of $75,000.00." (*Id.* at ¶ 55). Finally, as to Plaintiff's civil conspiracy claim (Count IV), Plaintiff seeks actual damages and punitive damages and asserts that "[t]o date, Eze's damages as set forth herein exceed $75,000.00." (*Id.* at ¶ 59). Additionally, Plaintiff seeks attorney's fees pursuant to FDUTPA. (*Id.* at p. 11). Plaintiff never specifies a figure or estimate of lost income, lost profits, personal property, attorney's fees, lost back pay, or lost front pay.

### III. STANDARD OF REVIEW

Pursuant to Rule 72(b)(3), the Court reviews de novo any part of a magistrate judge's R&R to which a party objects. Fed R. Civ. P. 72(b)(3). The Court may receive further evidence; however, it is in the Court's discretion whether to consider any new evidence presented in a party's objection to the R&R. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

## IV.　ANALYSIS OF AMOUNT IN CONTROVERSY

On de novo review, the Court agrees with Magistrate Judge Baker that the Plaintiff has failed to plead sufficiently the requisite jurisdictional amount in controversy. In his Amended Complaint, Plaintiff asserts broad statements that his damages include lost income, lost profits, lost back and front pay,[3] personal property, and possible punitive damages for certain counts. (Doc. No. 11). However, Plaintiff provides no additional facts to give context to these damages but rather baldly asserts damages for lost profits and lost income. The Plaintiff provides no indication of whether he lost trucking jobs, what his income is, or if an employment relationship existed that would merit front pay or back pay.

Given the opportunity to show cause, Plaintiff responded, instead, with a conclusory statement that his "breach of contract claim alone provides for damages in excess of $75,000.00 due to lost income, lost back and front pay, and lost profits." (Doc. No. 12 at p. 2). This is insufficient. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1272 n.17 (11th Cir. 2000) ("[A] conclusory allegation that the amount in controversy requirement is satisfied [is] insufficient to sustain jurisdiction once that allegation is challenged . . . ." (citation omitted)).

Further, for support, Plaintiff cites cases from foreign jurisdictions not binding on the Court. Plaintiff first cites *Henderlong v. Allstate Insurance Company*, an unpublished district court opinion from the District of Colorado to support his argument that his allegations are sufficient to establish the amount in controversy. (Doc. No. 12 at p. 2). However, unlike the present case, *Henderlong* involved a dispute regarding insurance coverage that was removed to federal court. *Henderlong,* No. 10-cv-00698-PAB-KMT, 2010 WL 3843324, at *1 (D. Colo. Sept. 24, 2010). Although the complaint did

---

[3] *See supra* note 2.

not provide a sum certain, the defendant offered specific figures of personal injury protection coverage to prove by a preponderance of the evidence that the amount in controversy was met. *Id.* at *1-2.

However, unlike the defendant in *Henderlong*, Plaintiff fails to provide any figure of damages, other than the security deposit he paid, to support the amount in controversy. *See Morrison*, 228 F.3d at 1273 ("'It is the plaintiff's burden both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegation'." (citations omitted)); (Doc. No. 11 at ¶ 3). For the first time, in Plaintiff's Objections to Magistrate's Report and Recommendation, the Plaintiff provides the mean annual salary for a commercial truck driver living in North Central Massachusetts. (Doc. 19 at p. 3). This statistical figure is insufficient to establish the amount in controversy; especially, in an analysis requiring the Plaintiff to plead "with sufficient particularity the facts creating jurisdiction." *See Morrison*, 228 F.3d at 1273. The Plaintiff provides the Court with no indication if Plaintiff even earns the mean annual salary. Moreover, it is in the Court's "broad discretion" whether to consider this new evidence after Plaintiff had the opportunity to offer it to Magistrate Judge Baker and in his Amended Complaint, but failed to offer it. *See Williams*, 557 F.3d at 1291, 1292 ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."). Therefore, the Court declines to consider these new income figures provided for the first time in Plaintiff's Objections to Magistrate's Report and Recommendation.

Citing *LM Insurance Corporation v. Spaulding Enterprises Incorporated*, a Seventh Circuit opinion, Plaintiff further asserts that the amount in controversy can be met by aggregating his claims, in particular his punitive damages. *LM Ins. Corp.*, 533 F.3d 542 (7th Cir. 2008); (Doc. No. 12 at pp. 2-3). However, the Court does not find *LM Insurance Corporation*, a nonbinding case, persuasive. Although, the Court must

6

consider punitive damages in determining the amount in controversy "unless it is apparent to a legal certainty that such cannot be recovered," Plaintiff still does not provide the Court even a figure from which to determine whether punitive damages would exceed a single figure multiplier of compensatory damages.[4] *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (per curiam).

Regarding lost profits, it also unclear from the Amended Complaint what this damage would be, considering Plaintiff's status as an independent owner-operator. (Doc. No. 11 at ¶ 2). Additionally, the Court takes into account a reasonable amount of attorney's fees when determining the amount in controversy if an applicable statute provides for the recovery of attorney's fees. *See Morrison*, 228 F.3d at 1265. In the present case, FDUTPA provides for the recovery of reasonable attorney's fees. *Fla. Stat.* § 501.211(2) (2010). However, Plaintiff fails to provide the Court with a reasonable calculation to determine if attorney's fees will be sufficient to place Plaintiff's case above the amount in controversy requirement. *See* (Doc. Nos. 11, 12, 19). Finally, the Court may also consider whether the injunctive relief Plaintiff seeks under FDUTPA will place his case above the amount in controversy. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) ("'When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective'" (citation omitted)); (Doc. No. 11 at ¶ 34) (pleading for an injunction under

---

[4] In support of a larger inference on punitive damages, Plaintiff cites for the first time in his Objections to Magistrate's Report and Recommendation *Merle Norman Cosmetics, Inc. v. Labarbera*, an unpublished district court opinion from the Southern District of Florida. (Doc. No. at p. 5 n.5). Not only is this opinion not binding on the Court, it is not even persuasive. In *Merle Norman Cosmetics, Inc.*, the Plaintiff, a cosmetic maker that sold products through its franchised "studios," asserted claims of tortious interference with contract, civil conspiracy, and deceptive and unfair trade practices against defendant arising from banned Internet sales of its products. *Merle Norman Cosmetics, Inc.*, No. 07-60811-CV, 2007 WL 1812039, at *1 (S.D. Fla. June 22, 2007). Plaintiff cites the case to argue that court found that potential punitive damages for civil conspiracy claim and attorney's fees for the FDUTPA claim placed damages well-above the jurisdictional requirement. (Doc. No. 19 at p. 5 n.5). However, Plaintiff takes this conclusion out of context. In fact, the court found that plaintiff had an interest in the loss of goodwill from Internet sales, and that "[t]he potential injury of allowing internet [sic] sales to flourish does raise the amount in controversy well beyond the actual sales made by Defendant Labarbera." *Merle Norman Cosmetics, Inc.*, 2007 WL 1812039, at *4. Then, the court mentioned punitive damages and attorney's fees as additional measures rather than as a major source of the amount in controversy. *Id.*

FDUTPA to enjoin AEL and AELF from further violations of FDUTPA). Again, however, the Plaintiff fails to provide facts to show that the injunctive relief, if granted, will give the Plaintiff a monetary value of benefit. *See Morrison*, 228 F.3d at 1268, 1273; *see also Federated Mut. Ins. Co.*, 329 F.3d at 807 ("[W]here jurisdiction is based on a claim for indeterminate damages, the *Red Cab Co.* 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum" (citations omitted)).

Plaintiff argues that he need not show how much he will recover but rather the amount in controversy. For support, Plaintiff cites another Seventh Circuit opinion, *Blomberg v. Service Corporation International*. (Doc. No. 19 at p. 4). In *Blomberg*, the Seventh Circuit addressed whether remand was proper for a Class Action Fairness Act (CAFA) case involving past wages owed under state wage laws when CAFA's amount in controversy requirement was supposedly not met. *Blomberg*, 639 F.3d 761, 762 (7th Cir. 2011). In *Blomberg*, the defendant seeking removal provided comparable cases from other jurisdictions to demonstrate that the amount in controversy was met. *Id.* at 763-64. The court found remand to be improper. *Id.* at 764.

It is true that the Plaintiff at bar does not need to establish what damages he will recover, but he does need to show how much is in controversy. As *Blomberg* emphasized, "A good-faith estimate is acceptable if it is plausible and adequately supported by evidence." *Id.* at 763 (citation omitted). Plaintiff has failed to provide even a good faith estimate of the amount in controversy. *See Morrison*, 228 F.3d at 1273 ("'It is the plaintiff's burden both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegation'." (citations omitted)).

## V. CONCLUSION

Because Plaintiff has not shown with sufficient facts that his case exceeds $75,000, Plaintiff's case is dismissed without prejudice for lack of subject matter jurisdiction.

Based on the foregoing, it is **ORDERED** as follows:

1. The Magistrate Judge's August 11, 2011 Report and Recommendation (Doc. No. 14) is **APPROVED** and **ADOPTED** insofar as the Magistrate Judge recommends Plaintiff's First Amended Complaint (Doc. No. 11) be dismissed for lack of subject matter jurisdiction in that Plaintiff fails to allege facts sufficient to support diversity jurisdiction.

2. Plaintiff's Objections to Magistrate's Report and Recommendation, filed on August 25, 2011, (Doc. No. 19) are **OVERRULED**.

3. Plaintiff's First Amended Complaint, filed on August 9, 2011 (Doc. No. 11) is **DISMISSED without prejudice**.

4. Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on September 27, 2011.

*[signature]*
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party